## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NEW JERSEY SPORTS PRODUCTIONS, INC.
D/B/A MAIN EVENTS, a New Jersey corporation,

                Plaintiff,

v.

MAIN EVENT BOXING GYM LLC,          Case No. _____
a Florida Limited Liability Company,

                Defendant,

and

JOSHUA A. WILLETT, an individual residing
in the State of Florida,

                Defendant.

_____/

## COMPLAINT FOR TRADEMARK AND SERVICE MARK INFRINGEMENT
## AND UNFAIR COMPETITION
## (INJUNCTIVE RELIEF SOUGHT)

Plaintiff, New Jersey Sports Productions, Inc., doing business as Main Events (hereinafter, "Main Events"), by its counsel, Dickinson Wright PLLC, states as follows, for its complaint against Defendants, Main Event Boxing Gym LLC (hereinafter, "MEBG") and Joshua A. Willett (hereinafter, "Willett") (collectively, "Defendants"):

## NATURE OF THE CASE

1.      This is an action for trademark and service mark infringement and unfair competition arising under the federal Lanham Act (15 U.S.C. § 1051 *et seq*.) and Florida

state law.    Plaintiff Main Events seeks damages, attorneys' fees, costs, and both preliminary and permanent injunctive relief.

## JURISDICTION AND VENUE

2.    This civil action asserts claims for trademark and service mark infringement, as well as unfair competition arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under the common law of the State of Florida.

3.    This Court has subject matter jurisdiction under Section 39 of the Federal Trademark Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331, 1338(a) and 1338(b), in that these claims are brought to determine a question of actual controversy between the parties arising under the trademark and unfair competition laws of the United States.  This Court has supplemental jurisdiction over Plaintiff Main Events' state law claims, pursuant to 28 U.S.C. § 1367(a).

4.    This Court has personal jurisdiction over Defendant MEBG because that party is a limited liability company organized under the laws of the State of Florida, is doing business in Florida and this Judicial District, and has committed unlawful acts which have caused injury to the Plaintiff within this Judicial District.

5.    This Court has personal jurisdiction over Defendant Willett because he is an individual who resides in the State of Florida and, upon information and belief, resides in this Judicial District and controls the actions and activities of MEBG.

6.    Venue properly lies in this Judicial District under 28 U.S.C. § 1391(b), because both Defendants reside in, and a substantial portion of the events giving rise to Plaintiff's claims arose in, this Judicial District.

## PARTIES

7.      Plaintiff Main Events is a New Jersey corporation having its principal offices at 772 Union Boulevard, Totowa, New Jersey.  As alleged more fully below, Main Events is in the business of promoting, broadcasting and producing professional boxing matches throughout the U.S. in connection with, *inter alia,* the name and mark MAIN EVENTS.

8.      On information and belief, Defendant MEBG is a Florida limited liability company, doing business at 2575 28th Avenue North, St. Petersburg, Florida 33713.  As alleged more fully below, MEBG is engaged in the unauthorized use of, *inter alia*, the name and mark MAIN EVENT BOXING and/or MAIN EVENT BOXING GYM in the operation of a commercial boxing gym facility located in St. Petersburg, Florida.

9.      On information and belief, Defendant Willett is an individual residing at 1111 Queen Street North, St. Petersburg, Florida 33713.  Defendant Willett also is listed as the Registered Agent for MEBG, whose registered office address is 1111 Queen Street North, St. Petersburg, Florida  33713.  Upon information and belief, Willett is the sole owner of Defendant MEBG (or holds virtually all the ownership interest in that company), and he actively supervises and is directly responsible for the day-to-day operations of that company.

## FACTS COMMON TO ALL CLAIMS

10.     For over three decades, Main Events has been in the business of promoting, broadcasting and producing professional boxing matches throughout the U.S.  Since its inception in 1978, Main Events has promoted boxing legends, world title holders, and

Olympic medalists, including Evander Holyfield, Arturo Gatti and Lennox Lewis, to name but a few, and has partnered with HBO, ESPN and NBC in connection with some of the highest grossing and most viewed boxing events of this century.

11.    Since its inception in 1978, Main Events has continuously used the MAIN EVENTS trade name and service mark in interstate commerce in connection with promoting, broadcasting and producing boxing matches, including the promotion and broadcasting of those matches to consumers in the State of Florida.  As early as 1997, Main Events began using the MAIN EVENTS logo, which has included the distinctive red-white-black color scheme shown below:





12.    Main Events prominently displays the MAIN EVENTS mark and logo on signage at its boxing matches, on the boxing ring, on advertising and promotional materials, as well as on clothing worn by its boxers during matches and on and in connection with clothing items which it sells and distributes.  Since at least as early as 1998, it has operated a website located at www.mainevents.com, where Main Events

provides information about and promotes its boxing matches and boxers. The MAIN EVENTS mark and logo are prominently displayed throughout the Main Events website at www.mainevents.com, as well as on Facebook (@MainEventsBoxing), Twitter (@Main_Events), Instagram (@main_events) and YouTube (https://www.youtube.com/user/meboxingseries), where it has tens of thousands of followers:





In addition, Main Events' promotional and fight highlight videos on YouTube have received hundreds of thousands of views.  See, for example, a true and accurate printout of the Main Events homepage and Facebook page attached as Exhibits 1 and 2, respectively, and which are incorporated by reference herein.

      13.    In addition to owning common law rights in the MAIN EVENTS mark and logo, Main Events is the owner of federally registered trademarks on the Principal Register of the United States Patent and Trademark Office ("USPTO"), including:



a.                        :  Reg. No. 2,509,761 for "promotion of sporting events and athletic competitions for others" in Class 35;



b.                        :  Reg. No. 2,509,760 for "production and distribution of sports and entertainment programs by means of videotape, television, cable television, satellite, radio, CD Rom, on a global information network, pay-per-view exhibition, closed circuit exhibition, and in other live and recorded formats" in Class 41;



c.    : Reg. No. 2,519,835 for "broadcasting of

sports and entertainment programs by means of television, radio, cable

television, satellite, and other wire and wireless forms of transmission"

in Class 38;



d.    : Reg. No. 3,806,012 for "Boxing shorts;

Hats; Shirts; Sweat shirts; Warm up suits" in Class 25; and,

e.    MAIN EVENTS:   Reg. No. 3,806,011 for "Hats; Shirts; Sweat shirts;

Warm up suits" in Class 25.

True and accurate copies of the Certificates of Registration for the foregoing marks are

attached collectively as Plaintiff's Exhibit 3 and are incorporated by reference herein.  All of

the aforementioned marks are hereafter collectively referred to herein as the "Main Events

Marks."  Main Events' aforesaid federal trademark registrations remain valid and in full

force and effect.

14.    The Main Events Marks are "inherently distinctive" marks and thus are

conceptually strong and afforded the greatest protection.

15.  Moreover, Main Events' exclusive right to use its registered marks has become incontestable under 15 U.S.C. § 1065.  By virtue of this "incontestable" status, Main Events' registrations provide conclusive evidence that it has the exclusive right to use those marks throughout the United States in connection with, among other things, the promotion of sporting events, production and distribution of sports and entertainment programs and clothing.

16.  Main Events has spent substantial time, money and effort to advertise and promote the Main Events Marks in print, broadcast media, and on the Internet via its website and social media pages, as well as through various cross-promotions and more.

17.  Main Events is a recognized innovator and leader in the sport of boxing and it, and its boxing matches, have received significant national attention from the public and the media.  For example, in 1991, Main Events partnered with HBO and the well-known boxing promotion company, Top Rank, to create TVKO, which introduced pay-per-view boxing in the United States. Since then, Main Events was involved in three events that, at the time, were the highest grossing boxing events in history, namely, Sugar Ray Leonard vs. Thomas Hearns, Evander Holyfield vs. George Foreman and Lennox Lewis vs. Mike Tyson.  Main Events also was involved in three of *Time* magazine's Top 10 Boxing Matches of All Time:  (1) Julio César Chávez vs. Meldrick Taylor; (2) Arturo Gatti vs. Micky Ward; and (3) Sugar Ray Leonard vs. Thomas Hearns.

18.  In 2003, Main Events orchestrated the return of professional boxing to broadcast television.  "The NBC Boxing Series" drew strong ratings and rave reviews in its May 2003 debut, and it returned in April/May 2004.  In April 2005, Main Events joined

forces with ESPN to bring pay-per-view boxing to the sports cable giant. The highly-acclaimed April 2005 event generated twice the number of buys than was predicted by many boxing insiders and television network executives.  In January 2012, Main Events once again brought boxing back to broadcast television and introduced it on NBC Sports (NBCSN) with the "NBC Sports Fight Night" series ("Fight Night"). Subsequently, the airing of Fight Night on NBC during the afternoon of December 22, 2012 was, at that time, the most viewed day-time boxing broadcast of this century.

19.     As a result of Main Events' longstanding use, advertising and promotion of the Main Events Marks, the Main Events Marks have acquired a special significance and meaning to the consuming public as identifying Main Events as the source of origin of goods and services that bear the marks.  The Main Events Marks are broadly recognized, nationally well-known and famous.

20.     Based on Main Events' long and extensive use of the Main Events Marks and federal trademark registrations therefor, Main Events owns the exclusive right to use those marks in connection with promoting, broadcasting and producing boxing matches and related services/goods throughout Florida and the United States.

21.     Main Events has used the Main Events Marks in commerce, and those marks became well-known and famous, long before the acts of Defendants in their initial adoption and use of the name and mark MAIN EVENTS BOXING and close variations thereof.

22.     Upon information and belief, Defendant Willett is no novice to the world of boxing and has at least 10 years of experience in boxing and boxing for fitness.  Upon

information and belief, prior to forming Defendant MEBG in March of 2016, Defendant Willet and others previously operated the boxing gym under the name, "Leftcoast Boxing Club and Community Center." Upon information and belief, Leftcoast Boxing Club was a non-profit organization providing boxing training to young adults and its members could use the club to pursue a boxing career at the amateur or professional level. Leftcoast Boxing Club dissolved in or about September of 2015.

23.    In March 2016, Defendant Willett formed the Defendant MEBG and, upon information and belief, thereafter began operating the boxing gym under the name and mark, MAIN EVENT BOXING and MAIN EVENT BOXING GYM (hereafter, the "Infringing Mark"). Upon information and belief, the Infringing Mark has been used by Defendants on MEBG's website (www.maineventboxingstp.com), as well as on their Facebook page (https://www.facebook.com/maineventboxingstp/) and promotional materials (https://www.facebook.com/maineventboxingstp/photos/gm.1823685141286767/665994586942754/?type=3&theater). For example:









*See* true and accurate printouts of pages from MEBG's website, as of April 12, 2017, attached hereto as Exhibit 4 and true and accurate printouts of pages from MEBG's Facebook page, as of April 28, 2017, attached hereto as Exhibit 5.

24.     As shown in the flyer above, in addition to providing boxing training services, the Defendants also have hosted, and continue to host, a boxing event named, "Battle of the Bay," which has been attended by guest star, National Boxing Association Super Middleweight Champion Darnell Boone.  *See* a true and accurate printout of a page from MEBG's Facebook page attached hereto as Exhibit 6.  Upon information and belief, the Defendants intend to host and promote another "Battle of the Bay" boxing event, which is currently scheduled to occur on August 26, 2017.

25.     Neither MEBG nor Willett were, or are, affiliated with Plaintiff Main Events or were, or are, authorized by Plaintiff to use any of the Main Events Marks in any manner, including in connection with the operation of a commercial boxing facility and/or the hosting and promotion of boxing events or fight nights.

26.     On April 10, 2017, it came to the attention of Main Events that Defendants had begun using the Infringing Mark to operate and promote their commercial boxing facility.  Thereafter, Main Events learned that Defendants also begun using the Infringing Mark in connection with the distribution of clothing.

27.     The Infringing Mark, MAIN EVENT BOXING and close variations thereof, incorporate the identical and distinctive wording "MAIN EVENT" and are highly similar in appearance and sound to the Main Events Marks.  In addition, the Infringing Mark is being used in connection with, among other things, legally identical services and goods, namely, the production and promotion of boxing events and clothing.

28.     Defendants' use of the Infringing Mark in the manner alleged herein is likely to confuse or deceive the purchasing public into believing that Defendants' business and commercial activities are owned, authorized, and/or sponsored by Main Events, or licensed or otherwise approved by or affiliated with Main Events, when they are not.

29.     Upon information and belief, both Defendants had at least constructive (if not actual) knowledge of Main Events' prior rights in and to the MAIN EVENTS name and Main Events Marks long before deciding to adopt and use the Infringing Mark for Defendants' own boxing-related services and goods.

30.     On April 13, 2017, Main Events, through its legal counsel, sent a written protest to both Defendants, objecting to the continued use of the Infringing Mark and demanding that Defendants, among other things, cease all further use of the words "Main Event" as part of any name or mark in connection with their boxing operation.  A true and accurate copy of that written protest is attached hereto as Exhibit 7.

31.     Despite receipt of Main Events' protest letter and after being placed on notice of Main Events' objections, Defendants have continued to use the Infringing Mark without authorization from Plaintiff, including on Defendants' Facebook page.  See a true and accurate printout of pages from MEBG's Facebook page, as of July 25, 2017, attached here as Exhibit 8.

32.     Upon information and belief, Defendant Willett has been (and is) actively and directly involved in the infringing conduct giving rise to the causes of action in this case, including the selection, adoption and continued use by Defendant MEBG of the Infringing Mark.

## COUNT I

## Trademark and Service Mark Infringement Re: the Lanham Act, 15 U.S.C. § 1114

33.     Plaintiff incorporates by reference Paragraphs 1-32 of this Complaint as if set forth in full herein.

34.     Plaintiff's federally-registered Main Events Marks are strong and distinctive.  The federal registrations owned by Plaintiff for the Main Events Marks have achieved incontestable status under 15 U.S.C. § 1065 and presently remain in full force and effect.  Those registrations include use of the Main Events Marks in connection with

the promotion of sporting events and athletic competitions, as well as the broadcasting of sports and entertainment programs by means of television, radio, cable television, satellite, and other wire and wireless forms of transmission (such as the internet, pay-per-view exhibition, closed circuit exhibition and other live and recorded formats). In addition, Plaintiff's registered marks are used in connection with the sale of various items of athletic clothing, including boxing shorts, hats and shirts.

35.    Plaintiff has invested enormous efforts and sums of money in creating the highly-recognized, nationwide reputation for its Main Events Marks. Through Plaintiff's efforts, the Main Events Marks have become widely and exclusively associated by the trade and public with that company in connection with the promotion of boxers and the promotion, production and broadcasting of boxing events. That strong association has existed for decades and continues through the present date.

36.    Upon information and belief, Defendants were fully aware of the trade and public's association of the Main Events Marks with Plaintiff before they adopted the term MAIN EVENT for use as part of their own name and mark in the operation of their boxing facility, in the promotion of boxing events and in the distribution of clothing. Despite that, Defendants proceeded to adopt, use and advertise MAIN EVENT in commerce as the dominant part of their name and mark in connection with their boxing services and apparel.

37.    The adoption, advertising and use by the Defendants of MAIN EVENT as part of their name and mark in connection with their boxing services and apparel has been without the authorization of Plaintiff.

38.    Defendants' Infringing Mark, which is dominated by the distinctive term MAIN EVENT, is substantially similar to Plaintiff's well-known name and mark. Defendants' also use the Infringing Mark for services highly related, if not identical, to those rendered and promoted by Plaintiff nationwide and in connection with goods identical to those sold by Plaintiff under the latter's registered marks. Accordingly, Defendants' ongoing use of the Infringing Mark is likely to confuse, cause mistake or to deceive the relevant trade and public into erroneously believing that Defendants' boxing activities are authorized, approved or sponsored by, or associated with, Plaintiff.

39.    Defendants' aforesaid use of MAIN EVENT as the dominant part of their name, service mark and trademark infringes upon the exclusive rights owned by Plaintiff in its federally-registered Main Events Marks and constitutes a violation of 15 U.S.C. § 1114.

40.    Plaintiff requested Defendants to halt their use of the Infringing Mark(*see* Plaintiff's Exhibit 7). Defendants have not complied with that request and they have continued their use of the Infringing Mark (*see* Plaintiff's Exhibit 8). Accordingly, Defendants' ongoing infringement of Plaintiff's rights has been intentional. Defendants' aforesaid conduct has been in bad faith and, at a minimum, in reckless disregard for Plaintiff's rights under the federal Lanham Act.

41.    Defendants' willful and infringing conduct has caused, and is causing, irreparable harm to Plaintiff's trademark rights and will continue unless enjoined by the Court. Moreover, Plaintiff is without an adequate remedy at law to halt such ongoing unlawful conduct.

## COUNT II

### Unfair Competition Re: the Lanham Act, 15 U.S.C. § 1125(a)

42.    Plaintiff incorporates by reference Paragraphs 1-41 of this Complaint as if set forth in full herein.

43.    Defendants' unauthorized use of the Infringing Mark in connection with the promotion of boxing activities and products has been made, advertised and otherwise promoted in interstate commerce within the meaning of the federal Lanham Act.

44.    Defendants' unauthorized use of the Infringing Mark in connection with promoting boxing activities and products is likely to cause confusion, mistake and/or deception as to the source, association, approval or sponsorship of those services.  The relevant trade and public are likely to falsely and erroneously believe that Defendants' mark and services are sponsored by, licensed by, or somehow associated with Plaintiff.

45.    By way of their aforesaid conduct, Defendants' use of the Infringing Mark falsely represents that their services and goods are connected or associated with the services and goods of Plaintiff, all to the harm and damage to Plaintiff's own goodwill in the Main Events Marks.  Such willful and intentional conduct on the part of Defendants places Plaintiff's own reputation beyond its control, thereby causing irreparable injury to Plaintiff and amounts to unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.    Defendants' willful and infringing conduct has caused, is causing, and will cause, irreparable harm to Plaintiff's trademark rights and that conduct will continue

unless enjoined by the Court. Moreover, Plaintiff is without an adequate remedy at law to halt such ongoing unlawful conduct.

## COUNT III

### Common Law Trademark and Service Mark Infringement, Trade Name Infringement and Unfair Competition Re: Florida State Law

47.     Plaintiff incorporates by reference Paragraphs 1-46 of this Complaint as if set forth in full herein.

48.     Defendants' conduct, as alleged above, amounts to trademark and service mark infringement, trade name infringement and unfair competition under the common law of the State of Florida. Defendants' conduct has been wanton, willful and undertaken in reckless disregard for the superior trademark rights of the Plaintiff.

49.     Defendants' wanton, willful and wrongful acts of infringement and unfair competition irreparably harm Plaintiff and that conduct will continue unless enjoined by the Court. Moreover, Plaintiff is without an adequate remedy at law to halt such unlawful conduct.

**WHEREFORE**, Plaintiff respectfully requests the Court grant it the following relief:

1.     Entry of judgment as follows:

    (a)     That Defendants have infringed the Main Events Marks under §§ 32 and 43(a) of the Federal Trademark Act; and,

    (b)     That Defendants committed acts of trademark and service mark infringement, trade name infringement and unfair competition under Florida common law.

2.      That Defendants and each of their agents, employees, servants, attorneys, successors, affiliates and assigns, and all others in privity or acting in active concert or participation with any of them be preliminarily and permanently enjoined from:

(a)      Using any trademark, service mark, domain name, trade name, corporate name, fictitious business name containing the words, MAIN EVENT, in connection with any boxing-related services and clothing;

(b)      Using the domain name <maineventboxingstp.com> and any other domain name that incorporates the wording, MAIN EVENT, in connection with any boxing-related services and clothing;

(c)      Using the words MAIN EVENT in any social media account ID, including, but not limited to any account ID for Facebook, Twitter, Instagram and/or YouTube;

(d)      Using the words MAIN EVENT in any email address;

(e)      Using the words MAIN EVENT, alone or in combination with other words, letters and/or symbols, in any manner which misleads, confuses or deceives or is otherwise likely to mislead, confuse or deceive the trade and/or public as to the origin, affiliation, association or connection of Defendants' goods and/or services with Plaintiff's goods and/or services;

(f)     Committing any acts calculated to cause persons to falsely believe that the services of Defendants are associated or connected with, or authorized or licensed by, the Plaintiff; and,

(g)     Competing unfairly with Plaintiff or otherwise injuring Plaintiff's business reputation in the manner complained of herein.

3.     That Defendants be mandatorily enjoined and ordered to cancel all rights, title and interest in the domain name <maineventboxingstp.com> and the Facebook ID "@maineventboxingstp" and any other domain name, Facebook account ID or other social media account ID containing the terms, MAIN EVENT.

4.     Pursuant to § 36 of the Federal Trademark Act, 15 U.S.C. § 1118, that Defendants be directed to deliver up to Plaintiff for destruction all advertisements, promotional materials, labels, signs, prints, packages, wrappers, receptacles, uniforms, business cards, stationery and all other materials in the possession or under the control of Defendants bearing or including the domain name <maineventboxingstp.com> and/or the trademark or trade name MAIN EVENT or any other reproduction, counterfeit, copy or colorable imitation of the name and mark MAIN EVENTS.

5.     That Defendants be required to account for and pay over to the Plaintiff any and all profits received by them or either of them from the sale of any goods in connection with their use of the words MAIN EVENT and/or as part of a name or mark in connection with the operation of their boxing facility and production/promotion of boxing events.  In addition, in view of the willful and intentional nature of Defendants' unlawful acts, Plaintiff requests that such monetary damages be trebled pursuant to 15 U.S.C. §1117(a).

6.    That due to the willful and intentional nature of their conduct, Defendants be required to equitably disgorge any and all profits they have made or realized from the sale of services in connection with their use of the Infringing Mark in order to avoid any unjust enrichment on their part.

7.    That Defendants be assessed punitive damages in an amount to be determined at trial which would serve to deter them from similar unlawful conduct in the future.

8.    That because of the exceptional nature of the case and the willful and intentional nature of Defendants' unlawful conduct, the Court award Plaintiff its reasonable attorneys' fees in accordance with 15 U.S.C. §1117(a).

9.    That this Court award such other and further relief as it shall deem appropriate.

Dated:  July 26, 2017                    Respectfully submitted,

                                         NEW JERSEY SPORTS PRODUCTIONS,
                                         INC. d/b/a MAIN EVENTS

                                         /s/ Samuel D. Littlepage
                                         SAMUEL D. LITTLEPAGE, ESQUIRE
                                         Trial counsel
                                         MELISSA ALCANTARA, ESQUIRE
                                         DICKINSON WRIGHT PLLC
                                         International Square
                                         1825 Eye St. N.W., Suite 900
                                         Washington, D.C.  20006
                                         Telephone:  (202) 659-6920
                                         Facsimile:   (844) 670-6009
                                         Primary:  SLittlepage@dicksonwright.com
                                                   MAlcantara@dickinsonwright.com
                                         Secondary: dwtrademarks@dickinsonwright.com
                                         *Attorneys for Plaintiff*

-and-

/s/ Alice R. Huneycutt
ALICE R. HUNEYCUTT, ESQUIRE
Florida Bar No. 293105
STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P. A.
SunTrust Financial Centre, Suite 2200
401 E. Jackson Street (33602)
Post Office Box 3299
Tampa, Florida  33601
Telephone:  (813) 222-5031
Facsimile:   (813) 222-5089
Primary:  ahuneycutt@stearnsweaver.com
Secondary:  mkish@stearnsweaver.com
*Attorneys for Plaintiff*

DC 38935-20 341319v3